10-4622-cr
USA v. Lyttle

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 12th day of January, two thousand twelve.

Present:
ROBERT D. SACK,
ROBERT A. KATZMANN,
BARRINGTON D. PARKER,
　　　　*Circuit Judges*.
_____

UNITED STATES OF AMERICA,

　　　　　*Appellee*,

　　　　- v. -　　　　　　　No. 10-4622-cr

MELVIN RAY LYTTLE,

　　　　　*Defendant-Appellant*,

VIOLETTE GAIL ELDRIDGE, PAUL E. KNIGHT,
JOHN L. MONTANA,

　　　　　*Defendants*.
_____

For Defendant-Appellant:　　PETER J. PULLANO, Rochester, N.Y.

For Appellee:　　　　　　　BRADLEY E. TYLER, Assistant United States Attorney, *of counsel*, *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, Rochester, N.Y.

Appeal from the United States District Court for the Western District of New York (Siragusa, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Melvin Ray Lyttle appeals from a judgment of conviction entered on November 8, 2010, by the United States District Court for the Western District of New York (Siragusa, *J.*), following a jury trial before the Honorable Sterling Johnson III, District Judge, Eastern District of New York. On appeal, Lyttle contends (1) that his trial counsel was ineffective, (2) that the district court erred in denying his competency motion, (3) that the district court erred in providing the jury with a transcript of his testimony, (4) that the charges in the indictment were barred by the statute of limitations, (5) that the district court erred in dismissing his motion to dismiss the money laundering counts, and (6) that the sentence imposed by the district court was substantively unreasonable. We assume the parties' familiarity with the facts and procedural history of this case.

Turning first to Lyttle's contention that his trial counsel was ineffective, in order for a defendant to prevail on a claim of ineffective assistance of counsel, he "must show that counsel's representation fell below an objective standard of reasonableness" and "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "The usual method of challenging the effectiveness of defense counsel in a federal criminal trial is by a collateral attack on the conviction under 28 U.S.C. § 2255." *United States v. Aulet*, 618 F.2d 182, 185 (2d Cir. 1980). Because "a trial record [is] not developed precisely for the object of litigating or preserving the [ineffective

2

assistance] claim and [is] thus often incomplete or inadequate for this purpose," such a claim "ordinarily will be litigated in the first instance in the district court, the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial." *Massaro v. United States*, 538 U.S. 500, 505 (2003).

Lyttle principally argues that his counsel was ineffective for (1) failing adequately to prepare him to testify and (2) failing to call an expert witness in banking or securities law to rebut the government's expert's testimony that the asset management agreement prepared by Lyttle was illegal on its face. Because the factual record on these and other issues is not fully developed, we conclude that Lyttle's ineffectiveness claim can be better addressed in the district court on a motion under 28 U.S.C. § 2255 and thus decline to consider the claim on direct review.

We next turn to Lyttle's argument that the district court erred in denying his competency motion. To be competent to stand trial, a defendant "must have (1) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and (2) 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)). We will uphold a district court's competency determination unless it is clearly erroneous. *United States v. Gold*, 790 F.2d 235, 239-40 (2d Cir. 1986). "Where there are two permissible views of the evidence as to competency, the court's choice between them cannot be deemed clearly erroneous." *United States v. Villegas*, 899 F.2d 1324, 1341 (2d Cir. 1990).

In this case, we cannot say that the district court's finding of competency was clearly erroneous in light of the report submitted by Judith Campbell, Ph.D. After monitoring Lyttle

3

from February 10, 2009 through March 27, 2009, Dr. Campbell concluded that Lyttle was competent to stand trial and was merely malingering. According to the report, at the time of Dr. Campbell's evaluation, Lyttle "[wa]s capable of perceiving the facts of his case realistically and engaging rationally, productively, and meaningfully in discussions of his case" and "underst[ood] the adversarial nature of legal proceedings[,] . . . the role of the prosecuting attorney[,] . . . the role of the judge[,] . . . [and] the implications of various pleas." Gov't App. 50. Dr. Campbell also noted that during monitored phone calls, Lyttle discussed his case in a "detailed, rational, goal-directed, and reality-based manner," and that while he "appeared extremely distrustful of his attorney," he "did not evidence paranoia of delusional proportions" and "never verbalized bizarre ideas, fears, or concerns which could suggest [that he was suffering] . . . from delusions or other signs of severe mental disorder." *Id*. at 46, 48.

While Thomas Sullivan, Ph.D., opined that Lyttle did suffer from a delusional disorder that interfered with his ability to trust his defense counsel, the district court was entitled to give more credence to Dr. Campbell's report since Dr. Campbell observed Lyttle over a forty-five day period while Dr. Sullivan only observed Lyttle for seven hours. In addition, as noted by the district court, Dr. Sullivan reported that while Lyttle "complained vociferously about his memory functioning . . . his performance on standardized tests of memory was consistently good," a finding consistent with Dr. Campbell's opinion that Lyttle was malingering. *Id.* at 10. Moreover, the district court observed that in its many dealings with Lyttle, he "always appeared to the Court to be intelligent, oriented in time and place, and very aware of the facts and circumstances related to his case." *United States v. Lyttle*, No. 05 Cr. 6116, 2009 WL 2390608, at *6 (W.D.N.Y. July 31, 2009). The district court was entitled to take into consideration its own

4

observations of Lyttle during the lengthy pre-trial proceedings. *See United States v. Morrison*, 153 F.3d 34, 46 (2d Cir. 1998) ("In determining competency, the court may consider . . . its own observations of the defendant's conduct."). Accordingly, the district court's determination that Lyttle was competent to stand trial was not clearly erroneous.

Lyttle next contends that the district court erred in providing the jury with a written transcript as opposed to an oral readback of his testimony. The decision to provide the jury with a written transcript in lieu of an oral readback is reviewed for abuse of discretion. *United States v. Escotto*, 121 F.3d 81, 84-85 (2d Cir. 1997). "Whether a court permits readbacks or sends transcripts, appropriate cautions should be given to the jury to minimize the particular risks associated with either technique[, such as] a jury instruction reminding the jury to consider all the evidence without unduly emphasizing any portion of it . . . ." *Id.* at 85.

Here, since the jury requested Lyttle's entire testimony—testimony consisting of approximately eighty-six pages—we cannot conclude that the district court abused its discretion by providing the jury with a written transcript of Lyttle's testimony. *Id.* at 84 ("[T]he possibility of undue emphasis on transcripts sent in lieu of readbacks is minimal when the jury has asked to rehear extensive sections of testimony."). As we observed in *Escotto*, "written transcripts provide the jury a more efficient method than readbacks of sorting through lengthy portions of testimony" and "will often be preferable to enduring a verbatim and usually unanimated rereading of testimony." *Id.* While Lyttle further argues that it was error to provide the jury the transcript without a cautionary instruction, Lyttle's trial counsel never objected to the lack of a cautionary instruction, so this argument is waived. *Id.* ("[T]o the extent that [the defendant] is arguing that it was error to provide the transcripts without giving a cautionary instruction, we reject this argument because it was not raised in the trial court.").

5

The next issue raised by Lyttle is whether the district court erred in failing to dismiss the indictment as time-barred. We review the district court's application of a statute of limitations *de novo*. *See, e.g.*, *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 542 (2d Cir. 1999). Here, because the indictment was filed on August 18, 2005 and alleges misconduct between the summer of 1999 to July 5, 2001, Lyttle argues that no act committed prior to August 18, 2000 should have been allowed to be charged in the indictment. *See* 18 U.S.C. § 3282. While Lyttle would be correct in the ordinary case, in certain circumstances, the court may suspend the running of the statute of limitations to permit the government to obtain foreign evidence:

> (a)(1) Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense *if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.*
>
> . . . .
>
> (b) Except as provided in subsection (c) of this section, a period of suspension under this section shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request.
>
> (c) The total of all periods of suspension under this section with respect to an offense:
>
> (1) shall not exceed three years; and
>
> (2) shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section.

18 U.S.C. § 3292 (emphasis added).

Lyttle acknowledges that the government successfully sought an order suspending the statute of limitations in order to seek records from Hungary, but he argues that the request was made in bad faith. Specifically, he contends that because he turned over the documents in

6

question to the SEC in accordance with a subpoena, the government already possessed the foreign documents, and thus only sought the suspension order to obtain more time to file the indictment. Even assuming that Lyttle turned over all relevant documents to the SEC, we cannot fault the government for seeking an extension so that it could request records from Hungary. Contrary to Lyttle's assertion, the government was not obligated to trust that the defendant had, in fact, made a complete production of documents to the SEC. Thus, because the suspension order was obtained in a procedurally proper fashion and because there is no evidence that the government's request was improper, we conclude that the charges against Lyttle were not time-barred.

We now turn to Lyttle's contention that the district court erred in denying his motion to dismiss the money laundering counts. We review the district court's denial of a motion to dismiss *de novo*. *See United States v. Mazza-Alaluf*, 621 F.3d 205, 209 (2d Cir. 2010) ("To the extent [defendant's] challenge presents an issue of statutory construction . . . our review is *de novo*."). A defendant is subject to criminal liability for money laundering when, "knowing that the property involved in a financial transaction represents the *proceeds* of some form of unlawful activity, [he] conducts or attempts to conduct such a financial transaction which in fact involves the *proceeds* of a specified unlawful activity." 18 U.S.C. § 1956(a)(1) (emphasis added). In *United States v. Santos*, 553 U.S. 507 (2008), a case involving allegations relating to a gambling operation, the Supreme Court addressed whether the term "proceeds" refers to "profits" or simply "receipts." *Id.* at 509. After concluding that the term "proceeds" was ambiguous, a four-justice plurality applied the rule of lenity and determined that "proceeds" refers to "profits," not "receipts." *Id.* at 514. Justice Stevens concurred in the judgment, but rejected the plurality's application of the rule of lenity to all predicate unlawful activity, reasoning that "proceeds" may

7

mean "profits" with respect to one predicate crime and "receipts" with respect to another. *Id.* at 526 & n.3. In *United States v. Quinones*, we held that "proceeds' under 18 U.S.C. § 1956 is not limited to 'profits' at least where . . . the predicate offense involves the sale of contraband," but declined to "address the proper interpretation of 'proceeds' under *Santos* where the predicate offense does not involve the sale of contraband." 635 F.3d 590, 600 & n.5 (2d Cir. 2011).

Lyttle argues that the co-defendants' return of investor principal – the basis for the money laundering counts charged in the indictment – did not constitute a financial transaction involving the "proceeds" of unlawful activity, both as a matter of law under *Santos* and also as a matter of fact. Assuming without deciding that "proceeds" means "profits" when, as here, the predicate "specified unlawful activities" are mail and wire fraud, Lyttle's argument is unavailing, because the district court specifically instructed the jury that "proceeds" means "net profits" and that "the proceeds of the specified unlawful activity do not include money that is used to pay the expenses associated with the specified unlawful activity." Tr. 960. In light of this instruction, the jury necessarily concluded that the co-defendants were in receipt of "profits," as opposed to "gross receipts." Moreover, this conclusion was perfectly reasonable; unlike the illegal gambling business in Santos – an ongoing operation that paid people to collect wagers and distribute winnings to clients – the investment scheme charged here involved no investment activity whatsoever. We thus conclude that the district court did not err in denying Lyttle's motion to dismiss the money laundering counts.

Lyttle's final argument on appeal is that the district court's sentence of fourteen years was "harsh and excessive" in light of his age and health problems. Appellant Br. 41. We review a district court's sentence for "reasonableness." *United States v. Booker*, 543 U.S. 220, 260-62 (2005). Reasonableness review is akin to a "deferential abuse-of-discretion standard." *Gall v.*

8

*United States*, 552 U.S. 38, 52 (2007).  In determining whether a sentence is reasonable, we examine both "the length of the sentence (substantive reasonableness) as well as the procedure employed in arriving at the sentence (procedural reasonableness)."  *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009).

Here, we cannot conclude that the sentence imposed by the district court is procedurally or substantively unreasonable.  As to procedural reasonableness, Lyttle fails to identify a single procedural error committed by the district court in imposing the sentence.[1]  The district court took Lyttle's age and health into consideration in rendering its sentence, noting that Lyttle was "almost 60 years old" and that his "health [was] not good," and decided to downwardly depart from the Guidelines range after "[c]onsidering all of the sentencing factors [and] considering [Lyttle's] age and physical condition."  Gov't App. 108-09.  As to substantive reasonableness, we only set aside a district court's substantive determination in "exceptional cases where the trial court's decision cannot be located within the range of permissible decisions," and, here, we cannot say that the below-Guidelines sentence issued by the district court falls outside "the boundaries of reasonableness."  *United States v. Rigas*, 583 F.3d 108, 122 (2d Cir. 2009) (internal quotation marks omitted).

We have considered all of Defendant-Appellant's remaining arguments and find them to be without merit.  For the reasons stated above, the judgement of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

[1] While noting that the district court applied certain sentencing enhancements over defense counsel's objections, Lyttle does not challenge any of these enhancements on appeal.

9