23-6316-cr
*United States v. Pasternak*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13ᵗʰ day of November, two thousand twenty-four.

PRESENT:
> BARRINGTON D. PARKER,
> BETH ROBINSON,
> > *Circuit Judges*,
> VERNON D. OLIVER,
> > *District Judge.**

———————————————————————

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                 No. 23-6316-cr

TAMAZ PASTERNAK, AKA TOMAS PASTERNAK,
AKA THOMAS PASTERNAK,

> *Defendant-Appellant*,

————————————————

* Judge Vernon D. Oliver of the United States District Court for the District of Connecticut sitting by designation.

INNA CHEBANENKO, ANDRII GERASYMENKO,
GEORGY ZAKALYUGIN, AKA GEORGE ZAKALYUGIN,

     *Defendants.*†

_____

FOR APPELLEE:                   JONATHAN SIEGEL, Assistant United States Attorney (Jo Ann Navickas, Assistant United States Attorney, *on the brief*), *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

FOR APPELLANT:              DANIEL HABIB, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Vitaliano, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Defendant-Appellant Tamaz Pasternak appeals from a judgment of conviction in the United States District Court for the Eastern District of New York after a jury trial at which he was convicted of one count of conspiracy to commit

_____

† The clerk's office is directed to amend the caption as reflected above.

wire fraud, in violation of 18 U.S.C. § 1349, and three counts of wire fraud, in violation of 18 U.S.C. § 1343.

This case centers around schemes to defraud used car buyers by hiding those cars' "salvage" histories. A car receives a salvage designation after an insurance company buys it from the insured owner to settle a loss claim for the vehicle—usually when the vehicle has been damaged. A salvage designation is usually conspicuously branded on the car's title. This is important because in many states, including New York, salvage cars cannot be registered to drive.

But a salvage car *can* be registered to drive in New York if it receives a "rebuilt" designation. In New York, that requires an in-person assessment at a salvage examination site, to make sure that the car wasn't rebuilt with stolen parts. By contrast, Indiana does not require that a salvage car be brought to an examination site; instead, the rebuilt title applicant can submit a certificate that a law enforcement officer has physically inspected and approved the vehicle. *See* Ind. Code § 9-22-3-15(a)(1).

Here, Pasternak's convictions were based on evidence that he engaged in two different schemes to conceal the salvage histories of cars he bought and sold. First, in the "Indiana Title Scheme"—the basis for the conspiracy count—the

government adduced evidence that Pasternak mailed money and salvage titles to co-conspirators, who returned Indiana rebuilt titles that were procured by fabricating law enforcement inspection certificates.

Second, in the "Title Altering Scheme"—the basis for the substantive wire fraud counts—trial evidence established that Pasternak physically altered the "salvage" or "rebuilt" brands on the titles of cars he sold to customers. By covering a brand with a sticker or scratching it off, Pasternak made it look like the cars had clean titles. He also posted Craigslist ads for cars he said had clean titles; in reality, those cars were salvage vehicles. Victims also testified that Pasternak misrepresented the salvage histories of cars they ultimately bought.

On appeal, Pasternak challenges the district court's jury instructions, certain evidentiary rulings, and the calculation of his sentence. We address each argument in turn. We assume the parties' familiarity with the underlying facts, procedural history, and the issues on appeal.

## I. Jury Instructions

The district court instructed the jury that to convict Pasternak of wire fraud, the government was required to prove, among other things, "that the alleged

4

scheme contemplated depriving another of money or property."  App'x at 769.

The court further explained,

> Property includes intangible interests such [as] the right to control the use of one's assets.  Therefore, a scheme contemplates [depriving] the private purchasers of property if it contemplates depriving them of potentially valuable economic information such as information about the quality and adequacy of the goods offered for sale.

App'x at 769–70.  The court thus presented two alternative theories of fraud liability: (1) Pasternak deprived victims of actual money, and (2) he deprived victims of the right to control property by denying them potentially valuable economic information about the vehicles they purchased.

Although the district court's right to control instruction was consistent with Second Circuit law when given, the parties agree that it was incorrect in light of the United States Supreme Court's subsequent decision in *Ciminelli v. United States*, 598 U.S. 306, 308 (2023).  In that case, the Supreme Court held that § 1343 does not apply to intangible property.  Pasternak first argues that reversal is required because we cannot determine whether he was convicted on a valid or invalid theory of wire fraud.

5

In the district court, Pasternak, not anticipating this change in the law, did not object to the district court's right to control instruction. We accordingly review the instruction for plain error. *United States v. Capers*, 20 F.4th 105, 116 (2d Cir. 2021).[1]

Where, as here, disjunctive theories of culpability are submitted to a jury that returns a general verdict of guilty, and one of the theories was legally insufficient, a defendant's conviction must be vacated if the defendant has shown "a reasonable possibility" that the jury may not have convicted had it not been instructed under the legally insufficient theory. *Capers*, 20 F.4th at 123.[2] Pasternak has not made this showing.

The trial record does not suggest a reasonable possibility that the jury could have convicted him only on the basis that he deprived them of *valuable economic information* about the quality and adequacy of the goods offered for sale and not on the basis that he fraudulently induced them to give him their *money*. Every

---

[1] To succeed under plain error review, Pasternak must establish "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010).

[2] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

victim who was given false information about the state of a vehicle's title also parted with their money to buy the vehicle.

Moreover, at trial, the government never argued to the jury that Pasternak should be convicted based on the right-to-control theory. To the contrary, the government's arguments focused solely on the deprivation-of-money theory. The government adduced overwhelming evidence that Pasternak induced customers to buy salvage or rebuilt cars by misrepresenting the nature of the cars' titles. For example, the jury heard from four victims who all testified that Pasternak denied his vehicles had fraudulent titles, that they paid money for the vehicles without knowing the salvage histories, and that they never would have knowingly purchased a salvage vehicle. Given the government's overwhelming evidence on the deprivation-of-money theory, it was highly improbable that Pasternak was convicted solely on the legally insufficient right-to-control theory.

Separately, even assuming he was not improperly convicted on the right-to-control theory, Pasternak contends that the deprivation-of-money jury instruction was defective. Specifically, Pasternak argues that because he sold the salvaged cars for what they were actually worth, the district court committed error by

failing to instruct the jury that it could convict only if it found beyond a reasonable doubt that he intended to sell cars for less money than they were actually worth.[3]

We are not persuaded. The "scheme to defraud" language in the wire fraud statute "demands neither a showing of ultimate financial loss nor a showing of intent to cause financial loss." *Shaw v. United States*, 580 U.S. 63, 67 (2016) (citing *United States v. Rowe*, 56 F.2d 747, 749 (2d Cir. 1932)). Rather, it is enough for the defendant to have contemplated a scheme "to injure another to [the defendant's] own advantage by withholding or misrepresenting material facts." *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970). Pasternak did so by misrepresenting the titles and inspection history of the vehicles he sold. Accordingly, we reject Pasternak's challenges to the District Court's jury instructions.

## II. Expert Testimony

Pasternak argues that the district court exceeded its discretion by preventing his expert witness, from testifying as to (1) Pasternak's knowledge (or lack thereof) of the Indiana Title Scheme, (2) Pasternak's intent to cause economic

---

[3] Because Pasternak raised this argument during the charge conference, we review it without deference to the district court. *United States v. Capers*, 20 F.4th 105, 116 (2d Cir. 2021).

harm, and (3) whether salvage examinations and safety inspections are different. We review a district court's decision to exclude expert testimony for excess of discretion. *See Bustamante v. KIND, LLC*, 100 F.4th 419, 426–27 (2d Cir. 2024).

First, Pasternak contends that his proffered expert testimony (1) "discuss[ing] the legal means of transferring titles across states as a form of lawful arbitrage" and (2) "explain[ing] that not all states require in-person examinations," was essential to his defense that he did not know the Indiana titles were fraudulent. Appellant's Br. at 44.

We disagree. The district court did not preclude Pasternak from offering expert testimony concerning the transfer of titles from state to state; it simply limited the testimony. The district court expressly acknowledged that "[e]xpert testimony as to how honest title could be obtained to market such vehicles as road-ready would be helpful and admissible under Rule 702," as long as the testimony was "limited to the requirements of the states of Indiana, New Jersey and New York," the states where all of the conduct at issue occurred. App'x at 96. The court below acted well within its broad discretion in concluding that Pasternak's expert could testify concerning the three states at issue but not the rest of the country.

Next, Pasternak asserts that his expert should have been allowed to testify about the wide variation in the level of damage that can justify a salvage label to support Pasternak's contention that he did not intend economic harm to the buyers. But as we have explained, the government did not have to prove that Pasternak sold the victims cars for more money than they were worth.

Finally, Pasternak contends that the district court exceeded its discretion by preventing his expert from testifying about the differences between salvage inspections—which are designed to make sure a car's parts haven't been stolen—and safety inspections—which aim to ensure a car is safe to drive. But there was no dispute during trial that a salvage examination is distinct from a safety inspection, and that salvage examinations are designed to address anti-theft concerns, not safety. *See, e.g.*, App'x at 139–40, 160–61.

In short, the district court did not exceed its broad discretion in limiting the scope of Pasternak's proposed expert's testimony.

### III.  Guidelines Calculation

Finally, Pasternak contests the district court's application of U.S.S.G. § 2B1.1(b)(1)(F), which provides for a 10-level enhancement if the court's loss

calculation exceeds $150,000.[4]  The court treated the total amount of money spent by the victims of Pasternak's scheme as loss.  It based that decision, in part, on Application Note 3(F)(v)(III) to U.S.S.G. § 2B1.1, which states that, "loss" includes "the amount paid for the property . . . with no credit provided for the value of those items or services."

Pasternak contends that the district court erred by applying Application Note 3(F)(v)(III) because § 2B1.1(b)(1)'s text unambiguously limits the enhancement to actual net loss.  We review challenges to the district court's interpretation of the Guidelines without deferring to the district court.  *United States v. Rainford*, 110 F.4th 455, 475 (2d Cir. 2024).  We defer to the Guidelines commentary unless the application note "violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of" the relevant

---

[4] Although Pasternak has been released from prison and is serving a supervised release term, his challenge to the term of his carceral sentence is not moot because the possibility that the district court would, on remand, alter his term of supervised release is more than "remote and speculative." *United States v. Chestnut*, 989 F.3d 222, 224 (2d Cir. 2021); *see also United States v. Mazza-Alaluf*, 621 F.3d 205, 213 (2d Cir. 2010).  Pasternak is currently serving a two-year term of supervised release, which is above the minimum Guidelines term of 1 year per count.  U.S.S.G. § 5D1.2(a)(2).  *See also Mazza-Alaluf*, 621 F.3d at 213 ("[A]s two years' supervised release was not the statutory minimum for the crimes of conviction, the district court could presumably lower Mazza–Alaluf's remaining, non-custodial sentence were we to remand.")

Guideline.  *Rainford*, 110 F.4th at 475 (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)).

We see no such conflict in the application note here.  As we recently explained in *Rainford*, "[t]he term 'loss' in § 2B1.1 has no one definition and can mean different things in different contexts."  110 F.4th at 475.  So the Guideline is not in conflict with the commentary's explanation that "loss" includes the total amount paid for the cars.  Accordingly, we reject Pasternak's procedural challenge to the district court's sentence calculation.

We have considered Pasternak's remaining contentions and conclude that they are without merit.  For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12