20-3208-cr
*United States v. Chestnut*

# United States Court of Appeals
# For the Second Circuit

August Term 2020

Submitted:  March 1, 2021
Decided:  March 2, 2021

No. 20-3208-cr

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

HERMIE GLYNN CHESTNUT, AKA
CHRISTOPHER WILLIAMS, AKA SEAN
HARRIS, AKA HENRY THOMAS, AKA GLEN
FAMBRO, AKA ALEX HOYT, AKA BARRY
CUMMINGS, AKA TIM THOMAS,

*Defendant-Appellant.**

Appeal from the United States District Court
for the Southern District of New York
No. 12-cr-837, George B. Daniels, *Judge.*

Before:      CABRANES, RAGGI, and SULLIVAN, *Circuit Judges.*

---

* The Clerk of Court is directed to amend the caption as set forth above.

Defendant appeals an order of the district court (Daniels, *J.*) denying his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). While this appeal was pending, however, Defendant completed his federal prison sentence, and although Defendant is now on supervised release, he has neither requested that the district court reduce his term of supervision nor advanced any arguments to suggest that such a reduction is warranted. Accordingly, we DISMISS this appeal as moot.

DISMISSED.

> Robert J. Boyle, New York, NY, *for Defendant-Appellant*.
>
> Edward B. Diskant and Anna M. Skotko, Assistant United States Attorneys, *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Defendant Hermie Chestnut appeals from an order of the district court (Daniels, *J.*) denying his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). While this appeal was pending, however, Chestnut completed his federal prison sentence. Although Chestnut is now on supervised release, he has neither requested that the district court reduce his term of supervision nor advanced any arguments to suggest that such a reduction is warranted. Accordingly, we DISMISS this appeal as moot.

## I. Background

Between 2008 and 2012, Chestnut was the ringleader of large fraud scheme. Chestnut, with the help of several co-conspirators, created fake lumber companies that he then used to solicit business from overseas buyers. Once he secured a wire transfer from those victims, he fabricated paperwork making it appear as though the victims' lumber was on its way. To further mask his crimes, Chestnut used fake or stolen identities during these transactions, including, in one instance, the identity of his teenage son.

Although Chestnut was eventually arrested in October 2012, that did not stop his criminal conduct. While he was detained at the Metropolitan Detention Center in Brooklyn, Chestnut continued to attempt to engage in fraudulent schemes. In fact, he was even caught using prison phones and computers to solicit new victims. As a result of this repeated flouting of institutional rules (not to mention criminal laws), Chestnut was stripped of all phone and email privileges.

In July 2013, Chestnut pleaded guilty to (i) conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, (ii) wire fraud, in violation of 18 U.S.C. § 1343, and (iii) aggravated identity theft, in violation of 18 U.S.C. § 1028A. In the plea agreement, the parties stipulated that the applicable U.S. Sentencing Guidelines

range was 116 to 139 months' imprisonment, which included a mandatory 24-month term of imprisonment as required under 18 U.S.C. § 1028A. This Guidelines range was driven in large measure by Chestnut's significant criminal history, including four convictions for fraudulent activity. The district court sentenced Chestnut in January 2014 to a term of 116 months' imprisonment and three years' supervised release.

On August 5, 2020, Chestnut moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A), identifying two "extraordinary and compelling reasons" that he claimed merited his early release from prison. First, Chestnut argued that he needed to be released so that he could take over childcare responsibilities for his two teenage children, as the State of Michigan had recently removed them from their mother's care. Second, he claimed that he suffers from an assortment of comorbidities (in particular, high cholesterol and obesity) that place him at heightened risk of serious complications if he were to contract COVID-19.

The district court denied Chestnut's motion the following month, concluding, among other things, that a "reduction in [Chestnut's] sentence would simply not satisfy the goals of sentencing." App'x at 89. Chestnut timely appealed that decision.

4

On February 19, 2021, while this appeal was pending, Chestnut completed his prison sentence. He is now serving his term of supervision.

## II. Discussion

Before wading into the merits of the parties' dispute, we must consider whether the case has become moot while pending on appeal. *See United States v. Suleiman*, 208 F.3d 32, 36 (2d Cir. 2000). "Article III . . . limits the federal judicial power to 'cases' and 'controversies.'" *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (quoting U.S. Const. art. III, § 2). "This 'case-or-controversy limitation underpins both our standing and our mootness jurisprudence.'" *Id.* (internal alteration omitted) (quoting *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000)). So, "as a general rule, 'if an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, we must dismiss the case.'" *Id.* (quoting *United States v. Quattrone*, 402 F.3d 304, 308 (2d Cir. 2005)).

Here, the only relief that Chestnut requests is that his prison sentence be reduced. As Chestnut has now completed that prison sentence, neither we nor the district court can grant him the relief he is seeking. *See United States v. Martin*, 974 F.3d 124, 144 (2d Cir. 2020); *United States v. Holloway*, 956 F.3d 660, 664 (2d

Cir. 2020). That does not automatically mean, however, that Chestnut's appeal is moot.

In certain circumstances, an appeal challenging a criminal sentence will not be rendered moot when the defendant is released from prison so long as the defendant is still subject to a term of supervision. *See Holloway*, 956 F.3d at 664. The reason for this is simple. Arguments for a shorter overall sentence could potentially cause the district court to reduce a defendant's term of supervision, whether because the original term is deemed to have been too long from inception or "to compensate" for the excess time the defendant served in prison. *United States v. Barresi*, 361 F.3d 666, 674 (2d Cir. 2004); *see also Holloway*, 956 F.3d at 664; *Blackburn*, 461 F.3d at 262 & n.2. Such a defendant would therefore retain a vested interest in the outcome of the appeal. But that will not always be the case.

For a term of supervised release to preserve the presence of a live case or controversy, there must be more than "a remote and speculative possibility that the district court could or would impose a reduced term of supervised release were we to remand" the matter. *United States v. Key*, 602 F.3d 492, 494 (2d Cir. 2010) (internal quotation marks and brackets omitted); *see also United States v. Mazza-*

*Alaluf*, 621 F.3d 205, 213 (2d Cir. 2010) (same); *Blackburn*, 461 F.3d at 262 (same). Chestnut's motion does not clear that bar.

Chestnut is not seeking a resentencing because of some procedural or substantive error in his original sentence or because changes in the law have made his original sentence too harsh. He is asking only for compassionate release, and his arguments – based on the risks posed by COVID-19 and his unique family issues – focus exclusively on why he should be released from *prison*.

More to the point, neither of Chestnut's arguments has any tendency to support a reduction in his term of supervised release. Supervision by the U.S. Probation Department will neither increase Chestnut's risk from COVID-19 nor impede his ability to care for his children. So, even assuming without deciding that Chestnut has put forward a meritorious compassionate release motion, the possibility that this would cause the district court to lower his term of supervision is remote, at best. That possibility is made even slimmer by some of the statements in the district court's order denying Chestnut's motion, which suggest a need to keep a close eye on Chestnut after his release. *See* App'x at 88–89 (identifying Chestnut's leadership role in the fraud, the fact that he recruited those closest to him to assist in the scheme, and the fact that multiple prior convictions have not

7

deterred Chestnut from engaging in criminal conduct); *see also Martin*, 974 F.3d at 141 n.15 (noting that the district court's prior statements made clear that it would not be inclined to grant such a reduction to the defendant's term of supervision); *Blackburn*, 461 F.3d at 262 (same).

It is also noteworthy that Chestnut has not asked the district court (or us) to reduce his term of supervision. In these circumstances, it would be quite strange for us to say that a live controversy exists concerning whether the district court abused its discretion in having failed to consider a request that Chestnut never in fact made. This is particularly true in light of our clarification in *Martin* that a reduction in a term of supervision "is distinct from modification of [a] term of imprisonment." *Martin*, 974 F.3d at 141 n.15.

Lastly, though we have already concluded that this appeal is moot, it bears noting that dismissal will not result in hardship to Chestnut. If Chestnut believes that the arguments that he marshaled in favor of compassionate release would also merit a reduction in his term of supervised release, he is free to make such a motion under 18 U.S.C. § 3583(e) and Federal Rule of Criminal Procedure 32.1(c).

### III.    Conclusion

For the foregoing reasons, we **DISMISS** this appeal as moot.