**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

ROBERTO YEPEZ, AKA Beto,

*Defendant-Appellant*.

No. 22-50233

D.C. Nos.
2:12-cr-00792-
GW-1
2:12-cr-00792-
GW

OPINION

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted February 8, 2024
Pasadena, California

Filed July 23, 2024

Before: Kim McLane Wardlaw, Michelle T. Friedland, and
Jennifer Sung, Circuit Judges.

Opinion by Judge Friedland

# SUMMARY[*]

## Criminal Law

The panel dismissed as moot Roberto Yepez's appeal from the district court's order dismissing his motion for compassionate release.

While Yepez was serving an unrelated state sentence, he was transferred to federal custody to face a federal drug trafficking charge. Later, while serving the federal sentence, he moved pro se for sentence credit for the time he had spent in federal custody while facing his federal charges. Although he later argued through counsel that the motion should be construed as one for compassionate release under 18 U.S.C. § 3582(c)(1)(A), the district court held that it could not construe the motion that way. The district court held that a legal claim that a sentence was miscalculated cannot be asserted in a compassionate release motion and instead must be brought through a habeas petition under 28 U.S.C. § 2241.

Before briefing was completed on appeal, Yepez was released from prison and began serving his term of supervised release. The panel held that Yepez's appeal became moot upon his release from prison, and so it must be dismissed.

The panel construed Yepez's motion as making two claims: a legal claim that the Bureau of Prisons miscalculated his sentence credit, and an equitable claim that

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the district court should grant compassionate release to reflect the sentencing court's intent. On appeal, however, Yepez argued only that he was eligible for compassionate relief for equitable reasons. The panel concluded that the relief of a reduction in Yepez's term of imprisonment was no longer available. In addition, according to the statutory text, the compassionate release provision, § 3582(c)(1)(A), could not be used to shorten Yepez's term of supervised release. The panel rejected Yepez's argument that the appeal was not moot because its outcome could affect a later motion under § 3583(e) for modification of his term of supervised release.

## COUNSEL

David R. Friedman (argued) and David Pi, Assistant United States Attorneys; Bram M. Alden, Assistant United States Attorney, Chief, Criminal Appeals Section; E. Martin Estrada, United States Attorney; Office of the United States Attorney, Los Angeles, California; Aaron Lewis, Covington & Burling LLP, Los Angeles, California; for Plaintiff-Appellee.

Dale F. Ogden Jr. (argued), Deputy Federal Public Defender; Cuauhtemoc Ortega, Federal Public Defender; Federal Public Defender's Office, Los Angeles, California; for Defendant-Appellant.

**OPINION**

FRIEDLAND, Circuit Judge:

While Roberto Yepez was serving an unrelated state sentence, he was transferred to federal custody to face a federal drug trafficking charge. He was convicted and sentenced in federal court. Later, while serving the federal sentence, he filed a pro se motion in federal district court arguing that he should be given credit toward that sentence for the time he had spent in federal custody while facing his federal charges. Although he later argued through counsel that the motion should be construed as one for compassionate release, the district court held that it could not construe the motion that way. The district court held that a legal claim that a sentence was miscalculated cannot be asserted in a compassionate release motion and instead must be brought through a habeas petition under 28 U.S.C. § 2241 in the jurisdiction in which the individual is incarcerated. The court held that it also could not proceed to decide the motion as a § 2241 habeas petition because Yepez was incarcerated in a different jurisdiction, and that the motion instead had to be dismissed.

Yepez appealed, but before briefing was complete, he was released from prison and began serving his term of supervised release. We hold that Yepez's appeal became moot upon his release from prison, so it must be dismissed.

**I.**

In July 2012, the State of California arrested and charged Yepez with being a felon in possession of a firearm and exhibiting a firearm. In August 2012, while Yepez was in state custody pending his state trial, the federal government

("the Government") indicted him for distributing at least fifty grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). He was convicted of the state firearm offenses, and in March 2013 he was sentenced to seven years in prison. In June 2013, the Government filed an application for a writ of habeas corpus ad prosequendum in the United States District Court for the Central District of California, requesting that the state warden be required to produce Yepez for the proceedings in his federal case. The court issued the writ. On or about June 27, 2013, Yepez was transferred to the custody of the federal Bureau of Prisons ("the BOP"), where he continued to serve his state sentence while his federal criminal proceedings took place.

Yepez ultimately pleaded guilty to the federal charge, and in exchange the Government agreed not to object to Yepez's request that his federal sentence be served concurrently with his state sentence.

At sentencing, the district court imposed a sentence of ten years in prison—the mandatory minimum—as well as five years of supervised release. The district court expressed an intent to give Yepez credit for time he spent in custody prior to the start of his federal sentence. The court said, "I do envision that he be given credit for the custody time that he has had both specifically in federal custody but also in the—since his state arrest." The court added that including such credit in the Judgment and Commitment Order might be difficult because the BOP "has a funny way of doing it" but that "[i]f [Yepez] doesn't get the credit, obviously, [he] can always come back and make the request." The court added that "[i]t might be a situation where [the court] might have to credit the time in some [other] way such that we don't give him the [mandatory minimum]" but that the court would prefer to do it by awarding credits for state time so

that "it is clear" the court is "giving him the mandatory minimum and yet also giving him the credit." The Judgment and Commitment Order stated that Yepez's federal sentence would run concurrently with his state sentence. It also stated that the court "recommend[ed] but [did] not order" the BOP to retroactively designate a "place of confinement for service of this federal sentence for the period of June 27, 2013 to August 25, 2014," the period between his transfer to federal custody and his federal sentencing.

Yepez was transferred back to state prison, where he finished serving his state sentence in 2016. He was then transferred to federal prison to serve the remaining part of his federal sentence. The BOP calculated Yepez's federal sentence as beginning to run on the day he was sentenced for the federal offense. In assigning pre-sentence custody credit, the BOP granted Yepez credit for the time he spent in state custody before his state sentence began. But the BOP did not give him credit for any of the time he spent serving his state sentence between his state and federal sentencings, even for the period in which he was in federal custody.

In 2019, Yepez filed multiple prison grievances, objecting in various ways that he had not received more credit. The grievances were all denied, and Yepez appealed pursuant to prison procedures. The BOP denied his appeals. According to the BOP, because 18 U.S.C. § 3585(b) prohibits the BOP from giving pre-sentence credit for time spent serving another sentence, it could not give Yepez credit for the time he spent serving his state sentence prior to his federal sentencing.

In 2022, while Yepez was incarcerated at a federal prison in Kentucky, he filed a pro se "Motion for an Amended Judgment to Reflect this Court['s] Sentencing Intent

Pursuant to 18 U.S.C. § 3582(c)(2)" in the United States District Court for the Central District of California, where he had pleaded guilty and been sentenced. The motion listed two issues: (1) "Whether Mr[.] Yepez is entitled to the jail time credit as was recomme[n]ded at sentencing . . . [f]rom June 27th 2013 through August 25th 2014, while being borrowed pursuant to a federal writ of habeas corpus ad prosequendum" and (2) "Whether this court will now amend the 120 months sentence to incorporate the Bureau of Prisons denial of [] Mr. Yepez['s] jail time credit as was pronounced at his sentencing. See Sentencing Transcripts Documents Entry #56, Page #11, Paragraph #6 throu[gh] #15."

The Government filed an opposition to the motion. Although Yepez had stated that his motion was being brought under 18 U.S.C. § 3582(c)(2)—which applies to defendants who, unlike Yepez, were sentenced to a term of imprisonment based on a Guidelines range that was subsequently lowered by the Sentencing Commission—the Government construed it as a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The Government then argued that a habeas petition under 28 U.S.C. § 2241, not a motion for compassionate release, is the proper vehicle for a claim that a sentence was miscalculated. The Government also argued in the alternative that the BOP correctly computed Yepez's sentence credits and that, even if the BOP had not, Yepez's request for additional sentence credits did not constitute extraordinary and compelling reasons warranting compassionate release.

Yepez, newly represented by the Federal Public Defenders, filed a reply brief in support of his motion. He stated that his motion did "not, as the Government suggest[ed], challenge BOP's computation" of his sentence

credits.   Instead, he contended that his "motion is best understood as a request for compassionate release to incorporate the time that BOP did not award."  Yepez argued that a court may grant compassionate release when a "properly calculated sentence [does] not reflect the court's intent or create[s] an overly punitive result," because that circumstance constitutes an extraordinary and compelling reason within the meaning of the compassionate release statute.   He therefore "request[ed] that [the] Court grant compassionate release and resentence him to time served."

The district court understood Yepez's motion to argue that his sentence was miscalculated.  The court held that a federal prisoner cannot raise such an argument in a motion for compassionate release and instead must do so in a habeas petition under 28 U.S.C. § 2241.   It then attempted to construe the motion liberally as a § 2241 petition but noted that such petitions must be brought in the district where the petitioner is incarcerated, not the district in which he was sentenced.  The district court therefore ruled against Yepez without prejudice to Yepez's filing a § 2241 petition in the Eastern District of Kentucky.

Yepez timely appealed.

In March 2023, after Yepez filed his opening brief with this court, he was released from custody and began serving his term of supervised release.

## II.

We decide de novo questions of mootness.  *United States v. Hulen*, 879 F.3d 1015, 1018 (9th Cir. 2018).  Likewise, we decide de novo questions of statutory interpretation, such as the scope of the compassionate release statute.  *United States v. Chen*, 48 F.4th 1092, 1094 (9th Cir. 2022).

## III.

Before we can determine whether we have jurisdiction over Yepez's claim, we must determine what that claim is. The parties agree that Yepez's pro se motion can be construed as a motion for compassionate release. But they disagree about what claim Yepez asserted in the motion. The Government contends that the motion raised only a legal claim that the BOP miscalculated Yepez's sentence credits. The Government further contends that such a claim cannot be brought through a motion for compassionate release and instead must be raised in a habeas petition under § 2241 in the jurisdiction of incarceration. Yepez argues that his motion raised an equitable claim that the district court should grant compassionate release because his sentence exceeded what the sentencing court intended. He asserts that such an equitable argument can be brought via a motion for compassionate release. He further argues that his release from prison did not moot this appeal because the district court could grant compassionate release by shortening his term of supervised release.

We think both sides' characterizations of Yepez's motion have merit. But each party grasps at one part of the motion without seeing the rest and then asserts the other's view is wrong. *Cf.* John Godfrey Saxe, The Blind Men and the Elephant: A Hindoo Fable, *reprinted in* The Poems of John Godfrey Saxe 259-60 (James R. Osgood & Co. ed., 1876). Ultimately, both sides are "partly in the right." *Id.* at 260. Particularly when construing Yepez's motion liberally, as we are obligated to do with pro se filings, *Pouncil v. Tilton*, 704 F.3d 568, 574-75 (9th Cir. 2012), it asserted both a legal claim and an equitable one.

Yepez's motion argued at points that he was legally entitled to additional pre-sentence credit. Issue one in the motion was whether Yepez was "entitled" to credit for the time he spent in federal custody before his federal sentencing. Yepez also stated in the motion that he had exhausted his administrative remedies, and Yepez argued in the attached grievances demonstrating exhaustion that he was legally "entitled" to sentence credits for the time he spent serving his state sentence in federal custody. He argued that the BOP's denial of credits violated the sentencing court's decision to run the state and federal sentences concurrently and that the BOP's denial ran afoul of its governing statute.

At the same time, the motion made an equitable argument that the court should alter Yepez's sentence to conform to the sentencing court's intent. Issue two in the motion was "[w]hether this court will now amend the 120 months sentence to incorporate the Bureau of Prisons denial of [] Mr. Yepez['s] jail time credit as was pronounced at his sentencing." Yepez cited the portion of the sentencing transcript where the district court stated that Yepez could come back to the sentencing court if the BOP did not grant him the credit. The motion ended by emphasizing that altering Yepez's sentence would "uphold the Court[']s recommendation to credit" him for time spent "in both Federal and State custody."

We therefore construe Yepez's motion for compassionate release as making two claims: a legal claim that the BOP miscalculated his sentence credit, and an equitable claim that the court should grant compassionate release to reflect the sentencing court's intent. But Yepez has since abandoned his legal claim. He argues in this appeal only that he is eligible for compassionate release for

equitable reasons related to the court's sentencing intent. We therefore have no occasion to decide whether Yepez's legal argument should have been brought via a § 2241 habeas petition. Only his equitable claim is before us.

## IV.

We must now decide if we have jurisdiction to consider the merits question presented in this appeal: whether a disparity between a sentencing court's expectations about pre-sentence credit and the BOP's actual award of pre-sentence credit can constitute an extraordinary and compelling reason justifying compassionate release.

Article III of the Constitution limits the jurisdiction of federal courts to "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). For a case or controversy to be ongoing, "[t]he parties must continue to have 'a personal stake in the outcome.'" *Id.* at 478 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). Otherwise, the matter becomes moot. But "[t]he burden of demonstrating mootness is a heavy one." *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001). A matter "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012)); *see also, e.g.*, *Garcia v. Lawn*, 805 F.2d 1400, 1403 (9th Cir. 1986) (holding that a case was not moot even though the injunction the plaintiff initially requested was no longer available due to intervening events, because the court could craft a different injunction that would remedy the complained-of injury).

The Government is correct that the only relief Yepez requested in the district court—a reduction of his term of

imprisonment—is no longer available. He has been released, so there is no term of imprisonment left to reduce.

That does not end our analysis, however, because in determining whether a matter is moot, we ask "'not whether the precise relief sought [at its outset] is still available,' but 'whether there can be *any* effective relief.'"[1]  *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017) (emphasis added) (quoting *McCormack v. Herzog*, 788 F.3d 1017, 1024 (9th Cir. 2015)).  Yepez argues that two other effective forms of relief are still available.  First, he contends that the compassionate release provision can be used to shorten his remaining term of supervised release.  Second, he argues that the outcome of this appeal could affect a later motion under § 3583(e) for modification of his term of supervised release.

We conclude that this appeal cannot result in any effective relief for Yepez, so we cannot resolve its merits. We must instead dismiss it as moot.

## A.

The compassionate release provision cannot be used to shorten a term of supervised release.  The text of the

---

[1] We have noted in cases involving questions of mootness that ordinary discretionary principles of waiver and forfeiture can affect whether certain relief is available.  *Seven Words LLC v. Network Sols.*, 260 F.3d 1089, 1095-97 (9th Cir. 2001) (rejecting a "late-in-the-day damages claim" raised only in supplemental briefing on appeal after the plaintiff had "effectively disavowed damages for tactical reasons" earlier in the litigation); *Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1213 (9th Cir. 2018) (rejecting a request for restitution that was first raised after the reply brief on appeal).  It is clear there has been no waiver or forfeiture here—Yepez requested alternative relief in his opening brief even before he was released, once it was evident that he would not receive a favorable decision by the time of his release.

provision states that a district court "may reduce the term of imprisonment."  18 U.S.C. § 3582(c)(1)(A).  On its face, that provision allows a court to reduce a person's term of incarceration, not his term of supervised release.  Congress used "imprisonment" rather than the broader word "sentence," with which it could have permitted a court to reduce both a term of incarceration and supervised release.  *See United States v. Joyce*, 357 F.3d 921, 924 (9th Cir. 2004) (noting that the word "sentence" in 18 U.S.C. § 3742(a)(3) and 18 U.S.C. § 3583(a) "encompasses both prison time and periods of supervised release").[2]

The compassionate release provision separately addresses supervised release.  It states that when a court reduces a term of imprisonment, it "may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment."  18 U.S.C. § 3582(c)(1)(A).  In other words, it may replace any subtracted length of imprisonment with an additional term of supervised release of up to the same length.  But that is the only type of change to supervised release contemplated by the text of the compassionate release provision.

---

[2] Our court, as well as other institutions involved in the sentencing process, routinely use the terms supervised release and imprisonment separately, reflecting that they mean different things.  *See, e.g.*, United States Sentencing Guidelines ("U.S.S.G.") ch. 5, pts. C, D (including separate sections within the chapter entitled "Determining the Sentence" for imprisonment and supervised release); *United States v. Soto-Olivas*, 44 F.3d 788, 790 (9th Cir. 1995) ("Congress authorized courts to 'tack a period of supervised release onto any term of imprisonment authorized by a substantive criminal statute.'" (quoting *United States v. Montenegro-Rojo*, 908 F.2d 425, 432 (9th Cir. 1990))).

Yepez argues that the term "impose" in that part of the compassionate release provision allows the court to reopen the question of supervised release and therefore either increase or decrease the original term of supervised release. 18 U.S.C. § 3582(c)(1)(A). To be sure, 18 U.S.C. § 3553(a) does use the term "impose" when discussing a person's initial sentencing, but that does not mean that whenever a statute uses the word "impose," it authorizes a plenary resentencing. To impose means "to levy or exact." *Impose*, Black's Law Dictionary (11th ed. 2019); *see also United States v. Martin*, 974 F.3d 124, 138 (2d Cir. 2020) (explaining in a different sentencing context that "[t]he act of imposing connotes the affirmative placement of a burden or a restriction"). Both § 3553(a) and the compassionate release provision use that ordinary meaning. In each context, a court affirmatively places a burden on the defendant—either by giving him a sentence in the first instance, or by adding an additional term of supervised release.

Yepez also argues that our interpretation of the compassionate release provision is inconsistent with the reasoning of *Concepcion v. United States*, 597 U.S. 481 (2022). In *Concepcion*, the Supreme Court held that a court may consider intervening changes of law and fact when "impos[ing] a reduced sentence" under § 404(b) of the First Step Act. *Id.* at 486. The Court based its decision on the "'long' and 'durable' tradition that sentencing judges 'enjo[y] discretion in the sort of information they may consider' at an initial sentencing proceeding." *Id.* at 491 (alteration in original) (quoting *Dean v. United States*, 581 U.S. 62, 66 (2017)). It explained that this tradition continues today and "also characterizes sentencing modification hearings." *Id.* at 492. According to Yepez, *Concepcion*

creates a presumption that district courts have broad discretion in all sentencing contexts. Even accepting Yepez's premise that *Concepcion* is not only about what information sentencing courts may consider but is also about discretion in sentencing choices more broadly, *Concepcion* itself recognizes that Congress can limit that discretion. *See id.* at 486-87. Here, Congress clearly expressed that a district court may use the compassionate release provision only to "reduce [a] term of imprisonment" and "impose" an additional term of supervised release. 18 U.S.C. § 3582(c)(1)(A).

Finally, Yepez argues that the compassionate release provision provides a district court with wide discretion, and that it would be strange to cabin that discretion in one area—especially in the area of supervised release, where the court normally retains wide discretion. Although it is true that a district court retains wide discretion over supervised release, Congress has established a separate framework for the exercise of that discretion. Under 18 U.S.C. § 3583(e)(1), after considering a subset of the § 3553(a) factors, a court may "terminate a term of supervised release . . . at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." Under § 3583(e)(2), a court may also "modify, reduce, or enlarge the conditions of supervised release" after it considers the same § 3553(a) factors. In light of those provisions, which give the district court substantial discretion to modify a term of supervised release, we see no reason why broad discretion over supervised release would necessarily also exist in a provision that primarily concerns imprisonment.

We therefore conclude that a motion for compassionate release may not be used to shorten a term of supervised release.

**B.**

We turn next to Yepez's argument that this appeal is not moot because its outcome could affect a later motion under § 3583(e) for modification of his term of supervised release. We reject that argument as well.

We have held that, even when a person has been released from imprisonment, a challenge to his sentence is not moot if a favorable ruling could be used "as a factor weighing in favor of reducing the term of supervised release" under § 3583(e). *Reynolds v. Thomas*, 603 F.3d 1144, 1148 (9th Cir. 2010), *abrogated on other grounds by Setser v. United States*, 566 U.S. 231 (2012). The merits question presented in this appeal is whether the incongruity between Yepez's sentence as calculated by the BOP and the district court's sentencing intent could qualify as an extraordinary and compelling reason warranting compassionate release. Even if we were to answer that question affirmatively, our conclusion would be irrelevant to the evaluation of any future motion under § 3583(e). Under § 3583(e)(1), a court may grant a reduction in the length of supervised release only after considering the defendant's behavior on supervised release, the interests of justice, and certain § 3553(a) factors. 18 U.S.C. § 3583(e)(1). Similarly, under § 3583(e)(2), a court may grant an alteration to the conditions of supervised release only after considering the

same § 3553(a) factors. 18 U.S.C. § 3583(e)(2).[3] None of those supervised release considerations in any way incorporates the extraordinary and compelling reasons standard for compassionate release. *See United States v. Ponce*, 22 F.4th 1045, 1047 (9th Cir. 2022) (holding that § 3583(e) does not contain an "exceptional or extraordinary circumstances requirement").

A court faced with a motion to alter the length or conditions of a term of supervised release under § 3583(e) *could* exercise its discretion to consider additional factors like the intent of the original sentencing judge. *See United States v. Miller*, 205 F.3d 1098, 1100 (9th Cir. 2000) ("[T]he plain language of [§ 3583(e)(2)] indicates that the district courts have broad discretion to alter the conditions of a defendant's supervised release."); *Ponce*, 22 F.4th at 1047 ("[A] district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014))). Given that discretion, Yepez could invoke the same facts in seeking a change to his supervised release as he invoked in trying to obtain

---

[3] The § 3553(a) factors a court must consider under § 3583(e)(1)-(2) are § 3553(a)(1) ("the nature and circumstances of the offense and the history and characteristics of the defendant"); (a)(2)(B) ("to afford adequate deterrence to criminal conduct"); (a)(2)(C) ("to protect the public from further crimes of the defendant"); (a)(2)(D) ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"); (a)(4) ("the kinds of sentence and the sentencing range established for" that offense category); (a)(5) (policy statements issued by the Sentencing Commission); (a)(6) ("the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"); and (a)(7) ("the need to provide restitution to any victims of the offense").

compassionate release.  But Yepez is not asking us to resolve
any factual issue here because the parties do not dispute what
the sentencing judge intended.  The merits question before
us is only whether the unfulfilled goals of a sentencing judge
may be a reason for granting a compassionate release
motion.  Nothing we might say in answering that question
would affect a future motion to alter the length or conditions
of Yepez's supervised release.  Because Yepez therefore no
longer has an interest in our resolution of the only merits
question on appeal, the appeal is moot.

That conclusion is consistent with our decisions in
*Gunderson v. Hood*, 268 F.3d 1149 (9th Cir. 2001), *Mujahid
v. Daniels*, 413 F.3d 991 (9th Cir. 2005), and *Reynolds*.
Although we held that those appeals were not moot, that was
because all involved legal (not equitable) challenges to the
length of a sentence.  *See Gunderson*, 268 F.3d at 1153;
*Mujahid*, 413 F.3d at 993; *Reynolds*, 603 F.3d at 1148, 1150.
A decision in favor of the petitioner in each of those cases
would therefore have meant that the Government had
committed a legal error resulting in an excessive sentence—
a conclusion that would be relevant to a motion under
§ 3583(e) to reduce the term or conditions of supervised
release even though the original form of relief sought (a
reduction in the term of imprisonment) was no longer
available.[4]

---

[4] Yepez also suggests that holding this appeal is moot would create a
circuit split with the Second and Seventh Circuits.  But we see no conflict
between our reasoning here and the cases Yepez cites.

In *United States v. Chestnut*, 989 F.3d 222 (2d Cir. 2021), the Second
Circuit explained, as we have, that "[i]n certain circumstances, an appeal
challenging a criminal sentence will not be rendered moot when the

Finally, we note that our decision presents no barrier to Yepez's filing a motion under § 3583(e) to modify his term of supervised release. As we explained above, a court evaluating such a motion may consider a wide range of arguments, including an argument similar to the one Yepez raised in his motion for compassionate release.

## V.

For the foregoing reasons, we **DISMISS** this appeal as moot.

---

defendant is released from prison so long as the defendant is still subject to a term of supervision" because "[a]rguments for a shorter overall sentence could potentially cause the district court to reduce a defendant's term of supervision." *Chestnut*, 989 F.3d at 224. The Second Circuit held that the appeal before it was moot despite this rule because the defendant's arguments, which related to the risks of COVID-19 and his family circumstances, "focus[ed] exclusively on why he should be released from *prison*" and therefore would not help him gain a reduction in his term of supervised release. *Id.* at 225. *Chestnut* is therefore perfectly consistent with our analysis here.

The Seventh Circuit's decision in *United States v. Von Vader*, 58 F.4th 369 (7th Cir. 2023), is inapposite. That case concerned a motion for compassionate release based on an argument that the defendant's sentence was "legally defective." *Id.* at 371. The court concluded that such an argument must be brought via habeas petition. *Id.* We have no occasion to decide that question here, because Yepez has abandoned his legal claim.