21-3064 (L)
United States v. Simmons

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2022
Nos. 21-3064 (L), 22-118 (XAP)

UNITED STATES OF AMERICA,
*Appellee-Cross-Appellant*,

*v.*

VALDEZ SIMMONS, AKA SEALED DEFENDANT 1,
*Defendant-Appellant-Cross-Appellee*.[*]

On Appeal from a Judgment of the United States District Court for
the Southern District of New York.

ARGUED: JUNE 2, 2023
DECIDED: AUGUST 11, 2025

Before: NARDINI, PÉREZ, and KAHN, *Circuit Judges*.

---

[*] The Clerk of Court is respectfully directed to amend the case caption as indicated above.

Defendant-Appellant-Cross-Appellee Valdez Simmons pleaded guilty to one count of possessing a firearm after being convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9). The United States District Court for the Southern District of New York (P. Kevin Castel, *District Judge*) subsequently sentenced Simmons to forty-eight months of imprisonment and three years of supervised release. On appeal, Simmons argues that § 922(g)(9) violates the Second Amendment to the U.S. Constitution, and that his sentence is procedurally and substantively unreasonable. In its cross-appeal, the Government initially challenged the district court's conclusion that a 2013 state drug conviction in Simmons' criminal record was not a "controlled substance offense" under U.S.S.G. § 2K2.1(a)(4)(A). The Government now concedes, however, that our decision in *United States v. Minter*, 80 F.4th 406 (2d Cir. 2023), issued during the pendency of this appeal, forecloses that argument. We conclude that § 922(g)(9) is constitutional, and that Simmons' sentencing challenges are moot, now that he has completed his prison term. Moreover, we agree with the Government that *Minter* forecloses its cross-appeal. Accordingly, we DISMISS Simmons' appeal in part as moot and otherwise AFFIRM the district court's judgment of conviction and sentence.

---

WON S. SHIN (T. Josiah Pertz, Michael D. Maimin, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney, Southern District of New

York, New York, NY, *for Appellee-Cross-Appellant*.

KENDRA L. HUTCHINSON, Appeals Bureau, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant-Cross-Appellee*.

WILLIAM J. NARDINI, *Circuit Judge*:

Pursuant to 18 U.S.C. § 922(g)(9), those who have been convicted of a misdemeanor crime of domestic violence may not "possess in or affecting commerce, any firearm or ammunition." In 2012, after he beat the mother of his infant child, Defendant-Appellant-Cross-Appellee Valdez Simmons was convicted of assault in the third degree under N.Y. Penal Law § 120.001. Simmons does not dispute that this offense constitutes a "misdemeanor crime of domestic violence" for purposes of § 922(g)(9). Several years later, Simmons was arrested in New York City and found to be in possession of a .380 caliber Kel-Tec model P-3AT pistol. Simmons subsequently pleaded guilty to one count of violating § 922(g)(9), and the United States District Court for the Southern District of New York (P. Kevin Castel, *District Judge*) sentenced him to forty-eight months in prison, to be followed by three years of supervised release.

Simmons now appeals both his conviction and sentence, arguing that § 922(g)(9) violates the Second Amendment to the U.S. Constitution, and that his prison sentence is procedurally and

3

substantively unreasonable.  The Government filed a cross-appeal of the sentence, challenging the district court's conclusion that Simmons' 2013 conviction for criminal possession of a controlled substance in the third degree under N.Y. Penal Law § 220.16(1) was not a "controlled substance offense" for purposes of determining his base offense level under the U.S. Sentencing Guidelines. [1]  The Government now concedes, however, that our decision in *United States v. Minter*, 80 F.4th 406 (2d Cir. 2023), issued during the pendency of this appeal, forecloses that argument.

We conclude that § 922(g)(9) is constitutional, and that Simmons' sentencing challenges are moot, now that he has completed his prison term.  In addition, we agree with the Government that our decision in *Minter* forecloses its cross-appeal.  Accordingly, we DISMISS Simmons' appeal in part as moot and otherwise AFFIRM the district court's judgment of conviction and sentence.

## I.    Background

In May of 2020, a pedestrian on Mace Avenue in the Bronx alerted a police officer that a man, later identified to be Simmons, had a gun.  The officer yelled for Simmons to stop, but he instead began to run.  The officer chased Simmons onto Cruger Avenue and then into a narrow driveway between two buildings.  After seeing Simmons rise from behind a car parked in the driveway, the officer shouted for him to lie down on the ground.  Instead of obeying this

---

[1] This case was held pending this Court's decisions in *Zherka v. Bondi*, 140 F.4th 68 (2d Cir. 2025), and *United States v. Minter*, 80 F.4th 406 (2d Cir. 2023).

command, Simmons began walking toward the officer, who again told him to get on the ground. Simmons continued walking closer to the officer but eventually lay down on the sidewalk and was arrested. During the incident, officers found a gun and an ammunition magazine under the car in the driveway. The firearm was a .380 caliber Kel-Tec model P-3AT pistol, which had been manufactured outside the state of New York.

In June of 2020, a grand jury returned a one-count indictment charging Simmons with possessing a firearm after having been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9). Simmons' domestic violence conviction stemmed from an incident in 2011 when he beat the mother of his infant child. According to an affidavit submitted by the victim, Simmons began punching her in the face and body, even though their five-month-old daughter was in between them, because he was upset with her for turning off the television. The victim picked up the child and tried to run away, but Simmons kept punching and biting her as she asked him to stop and watch out for their daughter. Simmons was subsequently convicted of assault in the third degree in violation of N.Y. Penal Law § 120.001.

Simmons is no stranger to the criminal justice system. His 2012 domestic violence conviction was one of more than a dozen state convictions in his criminal record at the time of his arrest in this case. He had been convicted for various other assaults, an attempted assault, petit and grand larceny, robbery, menacing, criminal possession of a weapon, criminal possession of a controlled

5

substance, criminal possession of stolen property, intent to obtain transportation without paying, attempted possession of burglar's tools, false personation, operating a vehicle while impaired by drugs, and bail jumping. As relevant to the Government's cross-appeal, Simmons was convicted in 2013 of criminal possession of a controlled substance in the third degree, in violation of N.Y. Penal Law § 220.16(1).

On February 22, 2021, Simmons pleaded guilty, without a plea agreement, to the one-count indictment. The district court held a sentencing hearing on December 14, 2021. At sentencing, the court addressed the parties' dispute as to whether Simmons' 2013 state drug conviction constituted a "controlled substance offense" for purposes of determining his base offense level under the U.S. Sentencing Guidelines. The court held that, because New York state law defines "controlled substance" more broadly than federal law, the 2013 conviction was not a controlled substance offense under U.S.S.G. § 2K2.1(a)(4)(A). After calculating Simmons' advisory range of imprisonment under the Guidelines to be twenty-seven to thirty-three months, the district court imposed an above-Guidelines-range sentence of forty-eight months of imprisonment and three years of supervised release. Both Simmons and the Government appealed.

In his initial briefing on appeal, Simmons argued that the district court violated 18 U.S.C. § 3582(a) by considering his medical needs when imposing his prison sentence, and that his prison sentence was otherwise substantively unreasonable. While this appeal was pending, the Supreme Court issued its decision in *New*

6

*York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). With this Court's permission, Simmons filed a supplemental brief arguing that § 922(g)(9) violates the Second Amendment. Simmons was released from prison on February 12, 2024, and he is currently on supervised release.

In its cross-appeal, the Government challenged the district court's determination that Simmons' 2013 conviction for violating N.Y. Penal Law § 220.16(1) is not a "controlled substance offense" under U.S.S.G. § 2K2.1(a)(4)(A). While this appeal was pending, however, we issued our decision in *Minter*. The Government concedes that *Minter* forecloses its cross-appeal.

## II.    Discussion

We conclude that § 922(g)(9) is constitutional, and that Simmons' sentencing challenges no longer present a live controversy. In addition, we agree with the Government that our decision in *Minter* forecloses its cross-appeal. Accordingly, we dismiss Simmons' appeal in part as moot, and we otherwise affirm the district court's judgment of conviction and sentence.

### A.    Constitutionality of 18 U.S.C. § 922(g)(9)

We begin by rejecting Simmons' challenge to the constitutionality of § 922(g)(9). Simmons concedes that plain error review applies here because he raised his constitutional challenge for the first time on appeal. *See* Fed. R. Crim. P. 52(b); *United States v. Donziger*, 38 F.4th 290, 302–03 (2d Cir. 2022). To prevail on plain error

review, an appellant must show "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (alterations adopted) (internal quotation marks omitted). Under the first prong—whether there is any error at all— we review the constitutionality of § 922(g)(9) *de novo*. *See United States v. Houtar*, 980 F.3d 268, 273 (2d Cir. 2020). Because we conclude that Simmons has not shown any error, much less error that is clear or obvious, we affirm the district court's judgment of conviction without reaching the other three prongs of plain error review.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Bruen*, the Supreme Court set forth a two-step framework for determining whether a statute violates the Second Amendment. *See* 597 U.S. at 17; *Zherka v. Bondi*, 140 F.4th 68, 75–79 (2d Cir. 2025). First, we determine whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 17. If it does not, then there has been no constitutional violation. If, on the other hand, the Second Amendment's plain text covers the conduct at issue, then "the Constitution presumptively protects that conduct," and we proceed to step two. *Id.* At the second step, the government must "justify its regulation" by demonstrating that it is "consistent with this Nation's

8

historical tradition of firearm regulation." *Id.* To meet this burden, the government must "identify a well-established and representative historical analogue" to the challenged regulation. *Id.* at 30 (emphases omitted). "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* at 17 (internal quotation marks omitted).

Here, we conclude that, although the Second Amendment's plain text covers Simmons' conduct, the Government has met its burden of showing that § 922(g)(9) is consistent with this nation's historical tradition of firearm regulation. Accordingly, and because Simmons offers no basis to distinguish himself from other domestic violence misdemeanants for purposes of assessing the constitutionality of the statute, we conclude that § 922(g)(9) is constitutional, both facially and as applied to him.

First, the plain text of the Second Amendment covers the conduct charged in this case. As the Supreme Court made clear in *Bruen*, "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 10. Section 922(g)(9), however, prohibits those "who ha[ve] been convicted in any court of a misdemeanor crime of domestic violence" from "possess[ing] in or affecting commerce, any firearm or ammunition," including for self-defense outside the home, *see Zherka*, 140 F.4th at 76. Simmons' conviction in this case resulted from his possession of a handgun—namely, a .380 caliber Kel-Tec model P-3AT pistol—outside his home. Thus, § 922(g)(9) "clearly

9

covers conduct that the Second Amendment presumptively protects." *Id.*

Because the Second Amendment is presumed to protect Simmons' offense conduct, the only remaining question at step one of our *Bruen* analysis is whether Simmons, as a domestic violence misdemeanant, "is included among 'the people' protected by the Second Amendment." *Id.* We conclude that he is.

At the outset, we agree with the Sixth Circuit that the Supreme Court's recent decision in *United States v. Rahimi*, 602 U.S. 680 (2024), suggests that domestic violence misdemeanants are indeed part of "the people" whose conduct the Second Amendment protects. *See United States v. Gailes*, 118 F.4th 822, 826 (6th Cir. 2024). In *Rahimi*, the Court assessed the constitutionality of § 922(g)(8), which prohibits a person subject to a domestic violence restraining order from possessing a firearm or ammunition if the order "includes a finding that he represents a credible threat to the physical safety of an intimate partner, or a child of the partner or individual." 602 U.S. at 684–86 (alteration adopted) (internal quotation marks omitted). In finding the statute constitutional, the Court proceeded directly to step two of the *Bruen* analysis, without addressing whether the defendant's conduct was covered by the Second Amendment's plain text. *Id.* at 690. The Court's decision to do so implies a general understanding that, despite their past offenses, domestic violence misdemeanants nonetheless fall within "the people." *See id.* at 708 (Gorsuch, J., concurring) ("[N]o one questions that [§ 922(g)(8)] addresses individual conduct covered by the text of the Second

Amendment."); *see also United States v. Jackson*, 138 F.4th 1244, 1253 n.4 (10th Cir. 2025) ("The Supreme Court presumed, without any analysis, persons with an outstanding domestic violence restraining order were part of the people.").

Moreover, as we explained in *Zherka*, the Supreme Court has "defined 'the people' broadly to include '*all* Americans'"—that is, "all members of the political community, not an unspecified subset." 140 F.4th at 76 (quoting, in part, *District of Columbia v. Heller*, 554 U.S. 570, 580, 581 (2008)). In *Zherka*, we rejected the premise "that there are certain groups of people—for example, violent felons—who fall entirely outside the Second Amendment's scope." *Id.* (quoting *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting)). We explained that the better approach to assessing the constitutionality of gun dispossession laws is to recognize that "all people have the right to keep and bear arms but . . . history and tradition support Congress's power to strip certain groups of that right." *Id.* (quoting *Kanter*, 919 F.3d at 452 (Barrett, J., dissenting)). Applying this approach, we held that felons are among "the people" whose conduct the Second Amendment protects. *Id.* at 75–77.

Here, the Government offers no basis to distinguish domestic violence misdemeanants from felons for purposes of defining "the people." Nor does it otherwise argue that Simmons is not properly considered part "of the political community." *Heller*, 554 U.S. at 580. Accordingly, we conclude that the Constitution presumptively protects Simmons' conduct. The Government must therefore justify

§ 922(g)(9) by demonstrating that it is consistent with this nation's historical tradition of firearm regulation.

Turning to the second step of our analysis, we join every other Circuit that has addressed the issue post-*Bruen* in concluding that the Government has met its burden of justifying § 922(g)(9). *See Jackson*, 138 F.4th at 1253–55; *United States v. Nutter*, 137 F.4th 224, 231–32 (4th Cir. 2025); *United States v. Bernard*, 136 F.4th 762, 765–66 (8th Cir. 2025); *Gailes*, 118 F.4th at 827–28. Before 1996, "a dangerous loophole in the gun control laws" allowed domestic violence misdemeanants to possess firearms. *United States v. Castleman*, 572 U.S. 157, 160 (2014) (alteration adopted) (internal quotation marks omitted). "Recognizing that firearms and domestic strife are a potentially deadly combination," *id.* at 159 (alteration adopted) (internal quotation marks omitted), Congress enacted § 922(g)(9) to disarm those convicted of a "misdemeanor crime of domestic violence," defined to include offenses involving "the use or attempted use of physical force" or "the threatened use of a deadly weapon" by, among other people, a parent, guardian, current or former spouse, or dating partner of the victim, 18 U.S.C. § 921(a)(33)(A)(ii). Guided by the Supreme Court's decisions in *Bruen* and *Rahimi*, as well as our recent application of those two cases in *Zherka*, we conclude that disarming domestic violence misdemeanants fits neatly within this nation's historical tradition of disarming those deemed dangerous to the physical safety of others.

While this appeal was pending, the Supreme Court issued its decision in *Rahimi*, concluding that § 922(g)(8)'s disarmament of those

12

subject to domestic violence restraining orders is constitutional. 602 U.S. at 700. In reaching this conclusion, the Court discussed our nation's history of regulations, including surety and "going armed" laws, that "target[ed] individuals who physically threatened others." *Id.* at 693–98. First, surety laws "authorized magistrates to require individuals suspected of future misbehavior to post a bond." *Id.* at 695. As pertinent here, such laws "targeted the misuse of firearms" and "could be invoked to prevent all forms of violence, including spousal abuse." *Id.* at 695–96. Next, going armed laws "prohibited 'riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land'" and "punished these acts with 'forfeiture of the arms and imprisonment.'" *Id.* at 697 (alterations adopted) (quoting 4 W. Blackstone, Commentaries on the Laws of England 149 (10th ed. 1787)). "Taken together," the Court explained, "the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698.

Like § 922(g)(8), § 922(g)(9) is analogous to the founding era regime of surety and going armed laws to the extent it disarms people deemed dangerous to the physical safety of others, including those who have threatened or committed violence in the form of spousal abuse. *Rahimi* therefore provides strong support for concluding that § 922(g)(9) is constitutional. Still, given the distinctions between § 922(g)(8) and § 922(g)(9), *Rahimi* is not squarely on all fours with this case. First, unlike the specific provision of § 922(g)(8) the Court discussed in *Rahimi*, disarmament under § 922(g)(9) does not require

a particularized, forward-looking judicial determination "that the defendant 'represents a credible threat to the physical safety' of another." *Id.* at 699 (quoting 18 U.S.C. § 922(g)(8)(C)(i)). Moreover, disarmament under § 922(g)(8) is temporally limited to the period during which the disarmed individual is subject to a restraining order, whereas § 922(g)(9) includes no such temporal limitation.

Nonetheless, to the extent there remained room for debate after *Rahimi* as to the constitutionality of § 922(g)(9), *Zherka* removed it. First, we recognized in *Zherka* that "[m]ost of the historical analogues that the Supreme Court identified in *Rahimi* . . . involved firearms restraints imposed on specific individuals." 140 F.4th at 85. Still, we upheld the broad, status-based disarmament of all convicted felons under § 922(g)(1) after reviewing "laws from seventeenth century England, the American Colonies, and the early United States" that "establish that it has long been permissible to regulate firearms possession through legislative proscription on a class-wide basis, without a particularized finding that the individuals disarmed pose a threat to society." *Id.* at 78–79 (footnotes omitted). Such "historical analogues" to § 922(g)(1) included laws disarming "[r]eligious minorities, political dissenters, Native Americans, and persons of color . . . based on a perception that persons in those categories were inherently dangerous or non-law-abiding." *Id.* at 85.[2] Thus, as we

---

[2] In *Zherka*, we recognized that many of the disarmament laws in place around the time of the nation's founding "are, to say the very least, offensive to contemporary morals and rooted in prejudiced stereotypes and racial, religious, or class bigotry," and that they "would undoubtedly offend other constitutional

explained in *Zherka*, our nation's "tradition of status-based, categorical restrictions on firearms possession is indicative of an understanding, before, during, and after the period of the Founding and continuing to the present day, of a legislative power, consistent with the Second Amendment, to disarm categories of persons presumed to be dangerous." *Id.* at 90.

The same historical analogues that justify the class-wide disarmament of felons under § 922(g)(1) also justify the disarmament of domestic violence misdemeanants under § 922(g)(9). Section 922(g)(9), like § 922(g)(1), prohibits a class of people from possessing firearms because "Congress perceives them, broadly, as dangerous." *Id.* This perception is well-founded. "[D]omestic abusers with firearms are dangerous not only to their direct victims, but also to accompanying loved ones, bystanders, and responding law enforcement officers." *Gailes*, 118 F.4th at 827. In addition, "[d]omestic violence often escalates in severity over time, and the presence of a firearm increases the likelihood that it will escalate to homicide." *Castleman*, 572 U.S. at 160 (internal citations omitted). It is therefore "no surprise . . . that Congress sought to deprive people with domestic-violence convictions from possessing firearms," *Gailes*, 118 F.4th at 827, and *Zherka* confirms that Congress may do so without

_____

provisions today," including the First and Fourteenth Amendments. 140 F.4th at 85, 90. Nonetheless, we explained that the laws are "relevant to the Second Amendment historical analysis that *Bruen* requires we conduct" because they "show that at the time of the adoption of the Second Amendment, legislatures had the authority to use status as a basis for disarmament." *Id.* at 85. Thus, we cited these laws as historical analogues to the class-wide disarmament of felons under § 922(g)(1). *Id.* at 85–91.

a particularized judicial determination as to the future dangerousness of the particular domestic violence misdemeanant to be disarmed, 140 F.4th at 78–79.

*Zherka* further confirms that the lack of an express temporal limitation on disarmament under § 922(g)(9) does not make it unconstitutional. In *Zherka*, we upheld the constitutionality of § 922(g)(1), even though it places no temporal limitation on the disarmament of felons. *See id.* at 92–93. And, in any event, disarmament under § 922(g)(9) is "not necessarily permanent." *Jackson*, 138 F.4th at 1254; *see Gailes*, 118 F.4th at 829; *Bernard*, 136 F.4th at 766. Rather, a domestic violence misdemeanant may regain the right to possess a firearm if his conviction is "expunged or set aside," or if he has been pardoned or had his civil rights restored. 18 U.S.C. § 921(a)(33)(B)(ii); *see Gailes*, 118 F.4th at 829 (explaining that "[t]he purported permanent ban in § 922(g)(9) may not always be so"); *Bernard*, 136 F.4th at 766 (same).

Finally, we reject Simmons' argument that this nation's historical tradition of firearm regulation supports the disarmament only of *felons*, not misdemeanants like him. In making this argument, Simmons asserts that misdemeanors, unlike felonies, do not involve a "serious violation of the law" or a "serious disregard for fundamental legal norms." Simmons' Ltr. Br. at 5–6 (emphasis removed) (quoting *Zherka*, 140 F.4th at 91). But § 922(g)(9) does not disarm *all* misdemeanants; it disarms those convicted of a misdemeanor crime of domestic violence. Notwithstanding any purported distinctions between misdemeanor and felony convictions,

16

Congress has assessed domestic violence misdemeanants, as a class, to be dangerous. And that is not surprising, because such people have a proven track record of actually committing violent acts, or of threatening violence, in the past. Thus, § 922(g)(9) fits squarely within this nation's history of disarming those considered to be a danger to the physical safety of others.

For these reasons, we conclude that the statute is constitutional both facially and as applied to Simmons, who has undisputedly been convicted of a misdemeanor crime of domestic violence. Accordingly, we affirm his judgment of conviction.

### B. Simmons' Sentencing Challenges

Having rejected Simmons' challenge to his conviction, we turn next to his challenges to the procedural and substantive reasonableness of his sentence. Simmons completed his prison sentence on February 12, 2024, and he is presently serving a three-year term of supervised release. Although a defendant's release from prison will not necessarily moot his sentencing challenges if he remains under supervision at the time of his appeal, such challenges remain live only if there is "more than a remote and speculative possibility that the district court could or would impose a reduced term of supervised release were we to remand the matter." *United States v. Chestnut*, 989 F.3d 222, 225 (2d Cir. 2021) (internal quotation marks omitted). Because the record in this case does not support any likelihood that the district court would reduce Simmons' term of

supervised release on remand, we conclude that his sentencing challenges are now moot.

At the outset, Simmons' sentencing challenges pertain only to his *prison* sentence, not his term of supervised release. Indeed, Simmons has never asked the district court (or us) to reduce his term of supervision, even though he has been on supervised release for well over a year and may seek such relief from the district court under 18 U.S.C. § 3583(e) if he so chooses. Given the lack of a challenge to Simmons' term of supervision, it would be "quite strange" for us to conclude that a live controversy exists as to that issue. *See Chestnut*, 989 F.3d at 225.

Moreover, during and after sentencing, the district court repeatedly expressed its concern with ensuring that Simmons' sentence would provide him with the proper medical care for his mental health issues. The "need for the sentence imposed . . . to provide the defendant with needed . . . medical care . . . in the most effective manner" is an appropriate factor for district courts to consider when imposing a term of supervised release. 18 U.S.C. § 3553(a)(2)(D); *see* 18 U.S.C. § 3583(c). Thus, the district court's focus on this factor strongly suggests that it would be disinclined to reduce Simmons' term of supervision if we were to conclude that it erred in fixing the length of his prison sentence.

Because the record contains no indication that the district court would reduce Simmons' term of supervised release on remand, his sentencing challenges no longer present a live controversy. Thus, to

18

the extent Simmons challenges the procedural and substantive reasonableness of his prison sentence, his appeal is dismissed as moot.

### C. The Government's Sentencing Challenge

Although the Government initially argued that the district court erred by failing to apply U.S.S.G. § 2K2.1(a)(4)(A) when determining Simmons' base offense level, it now concedes that our decision in *Minter* forecloses that argument. We agree. Section 2K2.1(a)(4)(A) provides that a defendant's base offense level is 20 if he "committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a controlled substance offense." A state drug conviction will qualify as a "controlled substance offense" under § 2K2.1(a) only "if the state conviction aligns with, or is a categorical match with, federal law's definition of a controlled substance." *United States v. Townsend*, 897 F.3d 66, 72 (2d Cir. 2018) (internal quotation marks omitted). Simmons was convicted in 2013 of violating N.Y. Penal Law § 220.16(1), which criminalizes, among other things, "knowingly and unlawfully possess[ing] . . . a narcotic drug with intent to sell it." "Narcotic drug" is defined under New York law to include cocaine, *see* N.Y. Penal Law § 220.00(7); N.Y. Pub. Health Law § 3306, and we held in *Minter* that "New York's definition of cocaine is categorically broader than the federal definition," 80 F.4th at 411. Thus, as the Government concedes, *Minter* forecloses the argument it raised in its cross-appeal.

19

### III.    Conclusion

Recent decisions of the Supreme Court, this Court, and other Circuits illuminate a commonsense principle firmly rooted in this nation's history of firearm regulation: A person deemed to be a danger to the physical safety of others may be disarmed. Our decision today confirms that this principle extends to the disarmament of domestic violence misdemeanants under 18 U.S.C. § 922(g)(9). Because Congress's decision to disarm domestic violence misdemeanants aligns with our nation's history of disarming those deemed dangerous to the physical safety of others, we conclude that § 922(g)(9) is constitutional.

In sum, we hold as follows:

(1) 18 U.S.C. § 922(g)(9) is constitutional, both facially and as applied to Simmons;
(2) Simmons' challenges to his prison sentence are moot because he has completed his prison term and because we discern no reason to conclude that the district court would reduce his term of supervised release on remand; and
(3) Simmons' previous conviction for violating N.Y. Penal Law § 220.16(1) is not a "controlled substance offense" under U.S.S.G. § 2K2.1(a)(4)(A).

For these reasons, we DISMISS Simmons' appeal in part as moot and otherwise AFFIRM the district court's judgment of conviction and sentence.